UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI,
WESTERN DIVISION


DONNA SMITH                                                    PLAINTIFF


VERSUS                          CIVIL ACTION NO. 5:07-cv-175-WHB-LRA


O.J. PACKNETT, Individually and in his
Official Capacity as DEPUTY SHERIFF OF
WILKINSON COUNTY, MISSISSIPPI;
REGINALD JACKSON, Individually and in his
Official Capacity as SHERIFF OF
WILKINSON COUNTY, MISSISSIPPI; and
WILKINSON COUNTY, MISSISSIPPI                                  DEFENDANTS


<u>OPINION AND ORDER</u>

This cause is before the Court on the Motions of Defendant O.J. Packnett to Dismiss and for Summary Judgment based on qualified immunity, and the Motions of Defendant Reginald Jackson to Dismiss and for Summary Judgment based on qualified immunity.[1] The Court, having considered the pleadings, attachments thereto, as well as supporting and opposing authorities, finds that all of the subject motions should be denied.


**I. Factual Background and Procedural History**

Plaintiff, Donna Smith ("Smith"), filed the above referenced lawsuit on September 19, 2007, alleging that Defendants, Wilkinson

---

[1]   Defendants first filed Motions to Dismiss based on the defense of qualified immunity.  After completing immunity-related discovery, both Defendants filed motions for summary judgment on the same grounds.

County, Mississippi; O.J. Packnett ("Packnett"), individually and in his official capacity as a deputy sheriff of Wilkinson County, Mississippi; and Reginald Jackson ("Jackson"), individually and in his official capacity as Sheriff of Wilkinson County, Mississippi, deprived her of her constitutional rights while acting under the color of the laws of the State of Mississippi.[2]   Specifically, Smith contends that she was unlawfully arrested, and that Packnett subjected her to excessive force.   Further, Smith alleges that Jackson, as Sheriff, knew of prior instances of illegal arrests and uses of excessive force by Packnett, and that he failed to properly train and supervise Packnett.

On March 3, 2008, Packnett and Jackson filed motions to dismiss Smith's claims against them in their individual capacities on the grounds of qualified immunity.   Following discovery on the immunity issue, Packnett and Jackson filed motions for summary judgment based on the same defense.   The motions for summary judgment, as well as the prior motions to dismiss, are now before the Court.

---

[2]   Although not specified in the Complaint, Smith is suing under 42 U.S.C. § 1983, which allows recovery for constitutional deprivations suffered under color of state law.   A plaintiff asserting a claim under Section 1983 generally must prove (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation (2) proximately caused (3) by the conduct of a "person" (4) who acted "under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia."   42 U.S.C. § 1983.   The parties do not contest that the "under color of state law" requirement is met in this case.

## II.   SUMMARY JUDGMENT STANDARD

Packnett and Jackson filed motions to dismiss, which they now seek to have replaced by their motions for summary judgment.  "If a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)."  Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Tuley v. Heyd, 482 F.2d 590, 592 (5th Cir. 1973)).  Here, after the motions to dismiss were filed, the parties conducted discovery on the issue of qualified immunity. Since Defendants have asked the Court to consider information obtained during discovery, the Court finds that their request to replace their motions to dismiss with their motions for summary judgment is proper.  Accordingly, the Court will analyze all motions as Rule 56(c) motions for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary

4

judgment is also improper where the court merely believes it unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).

### III. Legal Analysis

Packnett and Jackson move for dismissal of the claims alleged against them in their individual capacities based on the defense of qualified immunity. This defense represents an "attempt to balance the need to preserve an avenue for vindication of constitutional rights with the desire to shield public officials from undue interferences in the performance of their duties as a result of baseless claims." <u>Pueblo Neighborhood Health Ctrs., Inc. v. Losavio</u>, 847 F.2d 642, 645 (10th Cir. 1988).

A claim of qualified immunity is evaluated under the standard set forth by the United States Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982). In <u>Harlow</u>, the Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Id.</u> at 818. The touchstone of a qualified immunity defense is "objective legal reasonableness." <u>Id.</u>

Federal courts use a two-part test when evaluating a defense of qualified immunity.  First, the court must determine "whether the plaintiff alleged a violation of a clearly established constitutional right."  <u>Cozzo v. Tangipahoa Parish Council – President Gov't</u>, 279 F.3d 273, 284 (5th Cir. 2002).  Second, the court must decide whether the defendant's conduct was "objectively reasonable in light of clearly established law at the time that the challenged conduct occurred."  <u>Glenn v. City of Tyler</u>, 242 F.3d 307, 312 (5th Cir. 2001).

**A. Qualified Immunity as to the Claims against Packnett**

Smith seeks to hold Packnett individually liable under 42 U.S.C. § 1983 based on allegations of illegal arrest and use of excessive force.  As related to the claims against Packnett, Smith alleges the following facts, which are construed in the light most favorable to her:

> On August 9, 2007, [Smith] was sitting as a spectator in the courtroom at the Wilkinson County Courthouse in Wilkinson County, Mississippi, observing members of the Wilkinson County Democratic Executive Committee reading out loud and tallying absentee affidavit and curbside ballots purportedly cast in the August 7, 2007 First Democratic Primary Election.  Plaintiff's husband, Kirk Smith, was a candidate for Supervisor in the Second Supervisor's District of Wilkinson County, Mississippi at this time.

> During a break in the proceedings, Plaintiff stood up and asked for permission to speak.  After receiving no response from the Wilkinson County Executive Committee, she began to speak, expressing her concerns about the partiality of the tallying of said ballots and the

election process itself.  After she had been speaking for
approximately 3 minutes, Wilkinson County Democratic
Executive Committee member, Easter Prater, then told
Defendant O. J. Packnett to "arrest" Plaintiff.
Defendant O. J. Packnett told Plaintiff to cease talking
and when Plaintiff declined to cease talking, Defendant
Packnett seized Plaintiff by her right arm and violently
twisted her around.   During this process, Plaintiff
struck her right ankle and knee on the courtroom chairs
nearby, causing her to lose her balance and fall over the
chair, striking her right thigh on the chair.

After handcuffing Plaintiff, Defendant Packnett pushed
Plaintiff's hands up her back toward her neck as hard as
he could, causing injury and damage to Plaintiff's right
shoulder and neck.

Defendant Packnett then forced Plaintiff by her
handcuffed hands and arms out of the back door of the
courtroom.  As Defendant Packnett was doing this, he
lifted up further on the handcuffs to the point that
Plaintiff's feet nearly left the ground, causing her
further pain in her arms and shoulders.

When Defendant Packnett forced Plaintiff near the exit of
the courtroom, he pushed Plaintiff so hard he caused her
to fall into the door jam, causing substantial injury to
the right side of her head, her right shoulder and her
right hip.

Thereafter, Plaintiff was left in said jail with the
shoulder and neck injuries, serious contusions,
disfigurement to her face and bruising to her legs caused
from Defendant's use of excessive force.  She stayed in
the Wilkinson County jail for a period of four hours,
until being released by a Court Order.

Compl. ¶¶ 10-15.

Again, as to Smith's first claim of illegal arrest against

Packnett, the Court employs the following two step analysis for

determining whether the qualified immunity defense bars that claim:

(1) has Smith alleged a violation of a clearly established

constitutional right, and (2) was Packnett's conduct objectively

reasonable in light of clearly established law. <u>Cozzo</u>, 279 F.3d at 284.   As to the first requirement, Smith alleges that Packnett violated her constitutional right to be protected from illegal arrest, which is a clearly established constitutional right. Importantly, however, "[w]hether an arrest is illegal [] hinges on the absence of probable cause." <u>Sorenson v. Ferrie</u>, 134 F.3d 325, 328 (5th Cir. 1998).   Thus a plaintiff must show that the defendant lacked probable cause in order to state a cognizable violation of this constitutional right. <u>Id.</u> at 328.

"Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." <u>Mesa v. Prejean</u>, No. 07-30953, 2008 WL 4319977, at *3 (5th Cir. Sept. 23, 2008) (quoting <u>United States v. McCowan</u>, 469 F.3d 386, 290 (5th Cir. 2006)).   Packnett argues that the arrest was lawful because he had probable cause to arrest Smith under the Mississippi statute outlawing disorderly conduct.   That statute provides, in relevant part:

> Whoever, with intent to provoke a breach of the peace, or under such circumstances as may lead to a breach of the peace, or which may cause or occasion a breach of the peace, fails or refuses to promptly comply with or obey a request, command, or order of a law enforcement officer, having the authority to then and there arrest any person for a violation of the law to ... [a]ct or do or refrain from acting or doing as ordered, requested or commanded by said officer ... shall be guilty of disorderly conduct.

Miss. Code Ann. § 97-35-7(1).

The facts relating to the initial contact between Smith and Packnett are in dispute.  Both Smith and Packnett confirm that Smith's conduct in the courtroom caused a disturbance among the spectators.  (Smith Second Dep. 15:13-15; Packnett Dep. 20:12-18) Thereafter, their accounts diverge.  Packnett contends that he told Smith to cease speaking or leave the courtroom, and that he physically restrained her only after she refused.  (Packnett Dep. 20:18-20; 24:16-25:17)  Quite differently, Smith claims that Packnett grabbed her forcefully at the same time he instructed her to stop speaking.  (Smith Second Dep. 29:13-30:5)  The Court finds that these disputed facts are material as to whether Packnett arrested Smith before he had probable cause to believe that she had committed a crime.  Indeed, if the "arrest" occurred before Smith refused to comply with Packnett's command, then Packnett would not have had reason to believe that Smith had broken the law and, thus, no probable cause to arrest her.  These factual issues must be resolved before determining whether Packnett effected a constitutionally sound arrest.  Therefore, Packnett's request for summary judgment based on qualified immunity as to Smith's claims that she was allegedly illegally arrested must be denied.

Packnett also seeks summary judgment as to Smith's claim that he violated her constitutional rights by using excessive force during the arrest.  As recognized in Brendle v. City of Houston, Miss., 177 F. Supp. 2d 553, 559 (N.D. Miss. 2001):

> In determining the propriety of qualified immunity from excessive force claims, the court is faced with the unusual circumstance that the standard for stating a claim – the objective reasonableness of the force exerted – corresponds in large part with the inquiry governing qualified immunity – the objective reasonableness of the officer's conduct.

(citing <u>Heitschmidt v. City of Houston</u>, 161 F.3d 834, 839 (5th Cir. 1998)).  In considering whether the qualified immunity defense bars Smith's excessive force claim, the Court looks first at whether Packnett's actions were reasonable under the Fourth Amendment. Here, Smith alleges that, even though she did not resist arrest, Packnett forcefully grabbed her, spun her around, tightly handcuffed her, and twisted her arms up behind her back.  She further alleges that he slammed her into a row of chairs and into various other furnishings and door jams.  "In asserting these facts, [Smith] has satisfied the first step of the qualified immunity analysis.  That is, [she] has alleged the violation of a clearly established Fourth Amendment right not to suffer excess force."  <u>Id.</u> (citing <u>Graham v. M.S. Connor</u>, 490 U.S. 386, 394 (1989)).

Next, the Court must determine whether Packnett's actions were objectively reasonable.  Specifically, the Court must determine "'whether a reasonable officer could have believed' that he was violating the plaintiff's constitutionally protected rights."  <u>Id.</u> at 559.  Accepting Smith's version of the events as true, the facts are as follow: Smith stood to address a group of spectators during

a break in the poll counting.  Packnett, following instruction from one of the voting committee members, approached Smith.  Smith did not resist arrest, but continued speaking.  Packnett grabbed Smith, twisted her arms violently, slammed her into furniture, and otherwise injured her.  Smith did not at any time physically challenge Packnett.

Based on the forgoing allegations, the Court finds that there exists a genuine issue of material fact as to whether a reasonable officer would have known that such actions constitute excessive force, thereby violating an individual's – here Smith's – constitutional rights.  Accordingly, the Court finds that Packnett's request for summary judgment based on qualified immunity as to Smith's excessive force claims must fail.

**B. Qualified Immunity as to the Claims against Jackson**

In her Complaint, Smith also names Jackson as a defendant both individually and in his official capacity as Sheriff of Wilkinson County.  Regarding her claims against Jackson, Smith alleges the following:

> Sheriff Reginald Jackson, as the chief law enforcement officer of Wilkinson County, Mississippi, was aware of Deputy Packnett's prior acts of illegal arrests resulting in injury to third parties.  The said series of illegal arrests, and excessive force for alleged misdemeanor violations were proximately caused by the Defendant Jackson's failure to train and supervise.  The Sheriff failed to supervise and train the subordinate official, Defendant Deputy Sheriff Packnett; there is a causal link between the failure to train and supervise and the

11

violation of Plaintiff's constitutional rights and damage and the failure to train and supervise amounts to deliberate indifference to the rights of the Plaintiff in this lawsuit. From the pattern of illegal arrests and excessive force exhibited by Defendant Packnett prior to the arrest of the Plaintiff and the beating without any justification by the Plaintiff, the Sheriff Defendant Reginald Jackson was aware of facts for which an inference could be drawn that there was a substantial risk of serious harm to the Plaintiff. The inadequacy of training and supervision was obvious and obviously likely to result in a constitutional violation such as the injuries to the Plaintiff in this lawsuit.

Compl. ¶ 17.

In his motions, Jackson advances two theories for avoiding liability on Smith's claims: (1) he cannot be held liable because Smith failed to establish a constitutional violation, and (2) he cannot be held liable because Smith has not shown that he was personally involved in the incident underlying her claims. Since the Court has already determined that Smith has raised a genuine issue of material fact as to whether there was a constitutional violation, it proceeds to Jackson's second argument.

Smith does not allege that Jackson was present or otherwise personally involved in the events surrounding her arrest. Instead, she seeks to hold Jackson liable as Packnett's supervisor. As Jackson correctly recognizes, supervisory liability cannot be based solely on a theory of respondeat superior. Estate of Davis ex rel. McCully v. City of N. Richland Hills, 406 F.3d 375, 380–81 (5th Cir. 2005) (citing City of Canton v. Harris, 489 U.S. 378, 385 (1989)). Supervisory liability, however, even absent personal

12

involvement, may arise if "there is a 'sufficient causal connection' between the supervisor's conduct and the constitutional violation." Evett v. DETNTFF,, 689 (5th Cir. 2003) (quoting Thompkins v. Belt, 828 F.3d 298, 303-04 (5th Cir. 1987)).

One way of establishing supervisory liability is by showing that the defendant supervisor failed to properly train or supervise his subordinate. When a plaintiff relies on a theory of failure to train and/or supervise, she must show "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Smith v. Brenoettsy, 158 F.3d 908, 911-12 (5th Cir. 1998) (citations omitted). An official will be found to have acted with deliberate indifference if he is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and he draws such an inference. Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

In his motion for summary judgment, Jackson argues that he cannot be held liable as a supervisor because Packnett was adequately trained. Specifically, Jackson points to Packnett's attendance at training sessions, receipt of training materials on arrest techniques, and certification at the police academy.

In support of her claim for failure to train, Smith points to an opinion in a recent case involving the same defendants. There, when considering whether Jackson was immune for the alleged excessive force used by Packnett, the Court found:

> The plaintiffs allege specific deficiencies in Packnett's training, i.e., failure to train regarding use of excessive force and proper arrest procedures during traffic stops. The plaintiffs have submitted evidence of prior incidents involving Deputy Packnett which are similar, in varying degrees, to the incident complained of in this case. Deposition of Amy Rene Bell Greer; Deposition of John Roland White; Deposition of Jewell Jack Darden; Deposition of Emily Holliday Lewis. It is also alleged that Sheriff Jackson was directly notified of three of these incidents.

Ellis v. Packnett, Civil Action No. 5:06-cv-33, Slip op., at 21 (S.D. Miss. Sept. 10, 2007). Smith has also provided additional evidence of Jackson's knowledge of prior alleged misconduct by Packnett. Added to this list of prior instances is the Ellis case, in which the above-referenced opinion was issued. There, Sheriff Jackson also was aware of the allegations of excessive force, as he was a defendant in that case.

Although Jackson has provided information regarding the training Packnett received, the Court finds this information alone is insufficient to show that Packnett was properly trained. Taking into consideration Jackson's knowledge of Packnett's prior alleged misconduct, the Court concludes that Smith's evidence is sufficient to create a genuine issue of material fact as to whether Packnett was properly trained/properly supervised and, further, whether

14

Jackson acted with deliberate indifference as to Packnett's training and/or supervision. Accordingly, the Court finds that the Motion for Summary Judgment, as to the claims against Jackson in his individual capacity, should be denied.

### III. CONCLUSION

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Defendant O.J. Packnett to Dismiss Based on Qualified Immunity [Docket No. 16] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant Reginald Jackson to Dismiss Based on Qualified Immunity [Docket No. 17] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant O.J. Packnett for Summary Judgment Based on Qualified Immunity [Docket No. 90] is hereby denied.

IT IS FURTHER ORDERED that the Motion of Defendant Reginald Jackson for Summary Judgment Based on Qualified Immunity [Docket No. 88] is hereby denied.

IT IS FURTHER ORDERED that the stay entered in this case on September 4, 2008, is hereby vacated. Counsel for Plaintiff shall, within seven days of the date on which this Opinion and Order is entered, contact the Chambers of United States Magistrate Judge Linda R. Anderson and request the scheduling of a Case Management

Conference.

SO ORDERED, this the 6th day of November 2008.


s/ William H. Barbour, Jr.
UNITED STATES DISTRICT JUDGE